Leo Joseph NOTHOMB and Catherine Nothomb, Plaintiffs-Respondents,

v.

Hermine Huber LATTA, Administratrix c.t.a. of the Estate of Henry T. Nothomb, Deceased, Defendant-Appellant.

No. 40301.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 25, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 16, 1979.

John L. Sullivan, St. Louis, for defendant-appellant.

Daniel J. McMichael Fitzsimmons & Fitzsimmons, Attorneys, Inc., Clayton, for plaintiffs-respondents.

PUDLOWSKI, Judge.

Appeal from the trial court's determination that title to a promissory note vested in respondents, Leo Joseph Nothomb and Catherine E. Nothomb, husband and wife, by right of survivorship.

In our determination we will utilize without quotation marks substantial portions of the opinion by the trial court judge, the Honorable Michael E. Godfrey.

The evidence shows Kathryn Nothomb died owning a tract of commercial land at 70th and Dodge Streets, Omaha, Nebraska

(hereinafter referred to as the Dodge Street property). Under the terms of her will the Dodge Street property passed to Kathryn's two sons, Leo and Henry Nothomb, as tenants in common. In 1970, the Nothombs decided to sell the Dodge Street property to Samuel and Rebecca Wolf. To effectuate the sale the Nothombs issued a warranty deed in return for the Wolfs' promissory note which was secured by a first mortgage on the Dodge Street property. The deed was signed by Henry Nothomb, Leo Nothomb and Leo's wife, Catherine Nothomb. The promissory note was for $110,000 and was payable to "Leo Joseph Nothomb and Catherine E. Nothomb, husband and wife and Henry Theo Nothomb, single, as joint payees with right of survivorship." The mortgage recited the mortgagees to be "Leo Joseph Nothomb and Catherine E. Nothomb, husband and wife, and Henry Theo Nothomb, single, as joint tenants and not as tenants in common." Henry Nothomb died domiciled in Missouri, on April 19, 1975. The appellant, Hermine Huber Latta, a residuary legatee under Henry's will and administratrix of his estate, claimed Henry's interest in the note. Leo and Catherine Nothomb, relying on the right of survivorship, brought suit alleging they properly had title to the promissory note.

Neither party disputes that Nebraska law, being the law of the jurisdiction where the contract was made, controls the substantive issues of this case. *Schoene v. Hickam*, 397 S.W.2d 596, 601 (Mo.1965). It is also clear that the law of Missouri, the forum state, governs procedural matters. *Lukas v. Hays*, 283 S.W.2d 561, 565 (Mo. 1955). Furthermore, both parties agree that Nebraska permits the creation of joint tenancies in realty, *Sanderson v. Everson*, 93 Neb. 606, 141 N.W. 1025, 1025–1026 (1913), as well as in personalty, *In re Vance's Estate*, 149 Neb. 220, 30 N.W.2d 677, 681 (1948).

Appellant's first contention is that the trial court erred in finding that the promissory note created a right of survivorship in respondents. We do not agree. We hold, like the trial court below, that the promissory note created a joint tenancy with right of survivorship.

■ Appellant correctly notes that it is the rule in Nebraska that a joint tenancy can only be created by a contract that clearly expresses the parties purpose and intent to create a joint tenancy. *Sanderson v. Everson, supra.* If the purpose to create a joint tenancy is less than clearly expressed a tenancy in common will be imposed. *In re Ogier's Estate*, 175 Neb. 883, 125 N.W.2d 68, 74 (1963). This is because joint tenancies are not favored by the law. *Buford v. Dahlke*, 158 Neb. 39, 62 N.W.2d 252, 258 (1954).

■ In determining the type of tenancy created in this case we are guided by the well settled Nebraska rule which holds that when a promissory note and mortgage are executed as part of one transaction, they are to be read and construed together as one instrument. *Nathan v. McKernan*, 170 Neb. 1, 101 N.W.2d 756, 764 (1960). Because the note and mortgage in this case were executed contemporaneously as part of one transaction involving the financing for the sale of the Dodge Street property and the two documents allude to the other's provisions, the conclusion is inescapable that the note and mortgage may be read as one instrument. Thus, the provisions of one document can be used to explain or clarify the provisions of the other ". . . so that the intent of the parties may be carried out, and the whole agreement actually made may be effectuated." *Federal Farm Mortgage Corporation v. Cramb*, 137 Neb. 553, 290 N.W. 440, 443 (1940). The mortgage in this case explicitly refers to the Nothombs as "joint tenants and not as tenants in common." The note is somewhat more equivocal referring to the Nothombs as "joint payees with right of survivorship." This latter phrase, of the promissory note, is not immediately susceptible of a clear meaning as it does not specifically relate to either a joint tenancy or a tenancy in common. However, it does manifest one distinguishing feature of the joint tenancy—the survivorship characteristic. Construing the two documents togeth-

er, the joint tenancy provision in the mortgage would explain that the note intended to create a joint tenancy in the proceeds. Thus, the clarity of the language used in the mortgage suffices to amplify the less than clearly stated language in the note and manifests an intention that a joint tenancy was meant by the parties and not one of tenancy in common. By construing the note and the mortgage as one instrument this court, like the court below, is satisfied that the intent to create a joint tenancy in the proceeds from the sale of the Dodge Street property is expressed with sufficient clarity.

The appellant's second contention is that the trial court erred by finding that the joint tenancy was not severed. We cannot agree with appellant.

Appellant's argument is that the joint tenancy was severed by the conduct of the parties. The evidence shows that under the terms of the note $1,000 was payable each month to the Nothombs. For the five years prior to Henry's death, Henry and Leo divided the note payments, $500 each. These payments were made from the purchaser's successor directly to Henry and Leo. After Henry's death, until his estate was appraised for tax purposes, the system of distribution remained the same except the checks to Henry were made payable to his estate. The essence of appellant's argument is that because Catherine, who was entitled to an equal share of the proceeds of the note, never complained of the unequal distribution, she acquiesced to the severance in the joint tenancy in the proceeds yet due.

 Appellant's argument is without merit. Nebraska law holds that a joint tenancy can be destroyed by an act of one joint tenant which destroys one or more of its necessary unities of: possession, interest, time and title. In re Whiteside's Estate, 159 Neb. 362, 67 N.W.2d 141, 146 (1954). Appellant in effect argues that the unity of interest, in the proceeds remaining under the note, was severed because Catherine did not take a ⅓ share of those proceeds already paid. We think this case is similar to that addressed by the Supreme Court of

Nebraska in In re Whiteside's Estate, supra. Where it stated that when one joint tenant with the knowledge or consent of his fellow joint tenants withdraws a portion of bank account funds held in joint tenancy and uses the withdrawn money for his own personal benefit "then with regard to that portion so withdrawn there has been a severance of the joint tenancy with extinguishment of the right of survivorship." First, there is no evidence, aside from her failure to protest, that Catherine knew of or consented to the distribution scheme whereby Henry and Leo each received $500 per month. Assuming that Catherine did have knowledge of this distribution procedure, appellant has only established that Catherine acquiesced to the severance of the joint tenancy with respect to the money Henry and Leo actually received. In re Whiteside's Estate, supra.

The division of money between Henry and Leo during Henry's lifetime may be evidence of the Nothombs' intention to sever the entire joint tenancy but it is not dispositive of that question. The Canadian case of Flannigan v. Wotherspoon, 1 Dominion Law Reports (1953) 768 (Brit.Col.S. Ct.1952) held that where one joint tenant assumes a portion of the joint tenancy funds or estate for his own use, with the knowledge and consent of the other joint tenants, an inference may arise that the parties intended to sever the whole. But, "[e]ach case . . . depends on its facts and the reasonable inferences which ought to be inferred therefrom." Flannigan v. Wotherspoon, supra. It is apparent to this court that facts of this case do adequately support the inference that the parties merely agreed to divide the note payments in the forementioned unequal manner. This latter inference is supported by a number of American authorities, unfortunately no Nebraska case could be found on this point, which hold that joint tenants may make an agreement among themselves concerning the exclusive possession or division of income from the jointly held property without terminating the joint tenancy. State Tax Commissioner v. Tuchscherer, 130 N.W.2d

608, 614 (N.D.1964); *Hammond v. McArthur,* 30 Cal.2d 512, 183 P.2d 1, 3 (Cal. 1947); *Duncan v. Suhy,* 378 Ill. 104, 37 N.E. 2d 826, 829 (1941); 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 19 (1965). Thus, we are of the opinion that the evidence would not support a finding that the parties severed their joint tenancy in the proceeds remaining under the promissory note.

We have considered all of appellant's allegations and rule that the judgment of the trial court should be affirmed.

SNYDER, P. J., and SMITH, J., concur.